IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHELLE PALMERI,

    Plaintiff,

      v.

COCA-COLA COMPANY, et al.,

    Defendants.

CIVIL ACTION FILE

NO. 1:01-CV-3498-TWT

## ORDER

This is an ERISA action.  It is before the Court on Defendants Reliastar Life Insurance Company, Kemper National Services, Inc., and NATLSCO, Inc.'s ("Reliastar's") Motion for Summary Judgment [Doc. 76]; Defendant The Coca-Cola Company's ("Coca-Cola's") Motion for Summary Judgment [Doc. 77] and Partial Motion for Summary Judgment on the ERISA § 502(c) Claims [Doc. 78]; and the Plaintiff Michelle Palmeri's Motion for Standard of Review [Doc. 79], Partial Motion for Summary Judgment on the ERISA § 502(c) Claims [Doc. 80], and Motion for Summary Judgment [Doc. 81].  For the reasons set forth below, the Court finds as follows: Defendant Reliastar's Motion for Summary Judgment is GRANTED; Defendant Coca-Cola's Motion for Summary Judgment is GRANTED; Defendant Coca-Cola's Partial Motion for Summary Judgment is DENIED; the Plaintiff's

Motion for Standard of Review is DENIED as moot; the Plaintiff's Partial Motion for Summary Judgment is GRANTED in part and DENIED in part; and the Plaintiff's Motion for Summary Judgment is DENIED.

## I. BACKGROUND

The Plaintiff, Michelle Palmeri, was an employee of Defendant Coca-Cola and a participant in Coca-Cola's Long Term Disability Income Plan ("the Plan"). The Plan expressly named Coca-Cola as the Plan Administrator. Coca-Cola delegated certain of its powers and duties as Plan Administrator to the Long Term Disability Committee ("the Committee"). The Plan also provided for initial claims determinations by the Plan's administrative services provider, Reliastar Life Insurance Company ("Reliastar"). As of August 1999, Reliastar outsourced its responsibilities to NATLSCO, Inc. ("NATLSCO"). Between August 1999 and December 2002, NATLSCO performed administrative services for the Plan through its subsidiary Kemper National Services, Inc. ("Kemper").[1]

After a suicide attempt and subsequent inpatient treatment at Charter Peachford, the Plaintiff filed for Short Term Disability Benefits from her employer on or about October 14, 1999. She subsequently received those benefits for the maximum period.

_____

[1]For the sake of simplicity, the Court will collectively refer to Reliastar, NATLSCO, and Kemper as "Reliastar."

In June 2000, Reliastar informed her that her short term benefits would soon be ending and recommended she file for Long Term Disability ("LTD") Benefits.  On August 3, 2000, the Plaintiff gave written notice and timely applied for LTD benefits, also providing several statements from medical care providers in support of her claim. At this time, she also requested a "complete summary LTD plan."  (Def. Reliastar's Mot. for Summ. J., Ex. 18, at PRS 32.)

By letter dated November 16, 2000, Reliastar denied her LTD claim.  On January 10, 2001, Reliastar received the Plaintiff's appeal.  On March 19, 2001, the Plaintiff, through her counsel, sent a letter to both Reliastar and Coca-Cola making extensive document requests, including "a certified copy of any plan documents, including summary plan descriptions, policies, contracts or other relevant documents concerning this claim."  (Id., at PRS 152-57).  On April 2 & 3, 2001, Reliastar provided the Plaintiff with a copy of her claim file and a copy of the Summary Plan Description ("SPD") maintained in Reliastar's files.

Reliastar subsequently upheld its decision to deny the Plaintiff's claim for LTD benefits.  The letter explained the reasons for the denial, as well as alerting the Plaintiff that this was the "1st level appeal" and informing her that if she disagreed with this determination, she could file a second written request for review of her claim within sixty days.  (Id., at PRS 208-210.)  This letter was sent to both the Plaintiff and

her counsel by certified mail.  It is undisputed that the Plaintiff received this letter, as the record includes a confirmation receipt with the Plaintiff's signature.  (Id., at PRS 216.)  The letter to the Plaintiff's counsel, however, was not received by her and was returned to Reliastar.

Neither Reliastar nor Coca-Cola received any further correspondence from the Plaintiff regarding this denial.  On December 21, 2001, the Plaintiff filed this lawsuit. Included among the allegations was a claim that the Defendants failed to provide accurate and complete documents and information to the Plaintiff.  On March 8, 2002, Coca-Cola provided the Plaintiff with extensive Plan documents including complete and updated copies of both the Plan and the SPD.  The Plaintiff's case was then consolidated with that of other Coca-Cola employees and filed as a class action. Following a subsequent deconsolidation by this Court, the Plaintiff submitted an amended complaint, which included causes of action against both Reliastar and Coca-Cola, as well as the Committee and Coca-Cola's Director of Employee Benefits, Barbara Gilbreath.  The Plaintiff brought claims against these Defendants for wrongful denial of benefits under ERISA § 502(a)(1)(B), failure to provide all Plan documents under § 502(c), and attorney's fees under § 502(g).  See 29 U.S.C. § 1132.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. DISCUSSION

A. Exhaustion

Defendant Coca-Cola argues that the Plaintiff's wrongful denial claim should be dismissed because she failed to exhaust her administrative remedies by seeking a second appeal from the denial of her long term disability benefits.  As a general rule, the Eleventh Circuit requires ERISA plaintiffs to exhaust all available administrative remedies before they file an action in the district courts.  Perrino v. Southern Bell Tel. & Tel. Co., 209 F.3d 1309, 1315 (11th Cir. 2000).   The purposes behind the

exhaustion requirement include reducing the number of frivolous lawsuits brought under ERISA, minimizing dispute resolution costs, assisting fiduciaries in carrying out their duties, preventing premature judicial intervention, and providing the courts with a more fully developed record if litigation is necessary. Id. at 1315. The exhaustion doctrine is strictly applied, with exceptions made only for cases when "resort to administrative remedies would be futile or the remedy inadequate, or where a claimant is denied meaningful access to the administrative review scheme in place." Id. at 1315-16. These exceptions are narrow, and apply only when "requiring a plaintiff to exhaust an administrative scheme would be an empty exercise in legal formalism." Id. at 1318.

The Plaintiff does not argue that she meets either exception to the exhaustion doctrine. She contends rather that the Plan required only one level of appeal and that she did in fact exhaust her administrative remedies. A thorough examination of the Plan document does not support this contention. The Plan's 1994 Amendment states that the Committee:

> [W]ill have the exclusive responsibility and the complete and final discretionary authority to determine the eligibility of all Participants to receive benefits and the amount to which any Participant may be entitled under the Plan, and to enforce the claims procedure described in Section 7.12, and all actions or determinations of the Committee shall be final, conclusive and binding on all persons.

(Am. Compl., Ex. 1-B, at 1.)  The Plan also gave the Committee the authority to direct that claimants submit their claim to the Administrative Services Provider.  (Id.)  The Administrative Services Provider's decision was subject, however, to final review and modification by the Committee.  (Id., at 2.)  Thus, although the Plaintiff is correct that the Plan does not expressly require two levels of appeal, it makes clear that a final determination can only be made by the Committee.[2]  Both the Administrative Services Agreement between Coca-Cola and Reliastar and the testimony of Ms. Gilbreath, a member of the Committee, confirm that Coca-Cola, not Reliastar, had final decision making authority.  (Am Compl., Ex. 1-L, at 2; Pl.'s Mot. for Summ. J, Ex. 6-Gilbreath Dep., at 84.)

The Summary Plan Description ("SPD"), however, provides a different description of Reliastar's role.  The original SPD identified the Committee as the plan administrator and claims review fiduciary responsible for making claims determinations and handling the review process for the LTD Income Plan. (Id., Ex. 1-I, at 12-13.)  However, a January 1, 1999 amendment stated that "[t]he claims review fiduciary for the Long Term Disability Income Plan has been changed from

---

[2]Coca-Cola points out that in a prior case before this Court involving its Plan, the opinion's recitation of the facts referred to the Plan as requiring two levels of appeal.  See Brucks v. Coca-Cola Co., 391 F. Supp. 2d 1193, 1196 (N.D. Ga. 2005) (Duffey, J.).  The necessity of this second level of appeal, however, was not at issue in that case.

[the] Committee to the administrative services provider, Reliastar Life Insurance Company." (Id., Ex. 1-J.)  The SPD makes clear, moreover, that this fiduciary has the "sole authority to review and make determinations on all claims for benefits and all decisions of the named claims review fiduciary will be <u>final and binding on all affected parties</u>." (<u>Id.</u>, Ex. 1-I, at 13) (emphasis added.) Again on the next page, the SPD states that if a claim is denied, the claimant or her representative may, within 60 days, submit a written request to the claims review fiduciary, and the fiduciary's decision "will be final and binding on all parties." (<u>Id.</u>, Ex. 1-I, at 14.)  If a claim is denied after final review, the claimant "may file suit in state or federal court."  (<u>Id.</u>, Ex. 1-I, at 16.)  Thus, according to the terms of this SPD, Reliastar is the claims review fiduciary with final discretionary authority and the Plaintiff may file suit after Reliastar's decision.

A conflict thus exists between the Plan and the SPD as to whether Reliastar had final authority to determine the Plaintiff's eligibility for LTD benefits.  The Plaintiff argues that in such an instance, the terms of the SPD automatically control.  This is not completely accurate.  According to the Eleventh Circuit, such conflicts should be determined in favor of the SPD only where a claimant can show that she relied on its terms.  <u>Collins v. American Cast Iron Pipe Co.</u>, 105 F.3d 1368, 1371 (11th Cir.1997); <u>Branch v. G. Bernd Co.</u>, 955 F.2d 1574, 1579 (11th Cir. 1992).  Here, the Plaintiff has

failed to make such a demonstration.  In fact, she has alleged that the SPD provided to her by Reliastar prior to the filing of this lawsuit did not even include a copy of the Administrative Information Booklet, which contains an explanation of the appeals procedure.  (Pl.'s Resp. to Def. Coca-Cola's Part. Mot. for Summ. J., at 9.)  She thus cannot claim any reliance on the terms of the SPD in failing to submit a second appeal of her claim before filing this lawsuit.  The terms of the Plan document, which provide for a final appeal to the Committee, therefore, control.

The Plaintiff also emphasizes the fact that she received a letter from Reliastar explaining that it had denied her first level of appeal and offering her the option of filing a second written request for review.  (Def. Reliastar's Mot. for Summ. J., Ex. 18, at PRS 208-09.)  She argues that because this denial letter stated "you <u>may</u> file a second written request," the second appeal was presented as merely an option.  (Pl.'s Resp. to Def. Coca-Cola's Mot. for Summ. J., at 9.)  The Eleventh Circuit has stated however, that:

> Ordinarily, if a plan participant failed to take advantage of an available administrative appeal by pursuing it in compliance with a reasonable filing deadline, she has failed to exhaust her administrative remedies and that bars federal court review of her claim.

<u>Watts v. BellSouth Telecommunications, Inc.</u>, 316 F.3d 1203, 1206 (11th Cir. 2003).

Indeed, the facts in <u>Watts</u> instruct as to why the Plaintiff's claim must fail. There, the Eleventh Circuit created another "exception" to the exhaustion requirement

for a plaintiff who had reasonably interpreted her employer's SPD to permit her to file a lawsuit without exhausting her administrative remedies.  Id. at 1210.  The plaintiff failed to pursue a second and final administrative appeal because she believed, based on her reading of the SPD and her consultation with a union representative, that she did not need to do so before going to court.  She also swore out an affidavit confirming this belief.  Moreover, immediately after consulting with an attorney, she sent a letter to the defendant attempting to complete the administrative process.  Id. at 1206.  As recently explained by this Court, the Watts exception thus has an objective, a subjective, and a causation component:

> [T]o invoke the exception, a participant must show (i) that the relevant plan documents, objectively speaking, could reasonably be "interpret[ed] ⋯ as permitting her to file a lawsuit without exhausting her administrative remedies"; (ii) that she so interpreted them; and (iii) that, "as a result" of that misinterpretation, she failed to exhaust the administrative process.

Spivey v. Southern Co., 2006 WL 1030423, at *11 (N.D. Ga. 2006)(Story, J.)(citing Watts, 316 F.3d at 1210).

In this case, Ms. Palmeri does meet the subjective and causation requirements that justified an exhaustion exception in Watts.  First, whereas in Watts, the claimant both consulted the Plan document and sought the advice of a union representative, the record does not indicate that Ms. Palmeri made any attempt to determine whether a second appeal was required.  It is undisputed that she did not contact any of the

Defendants following the denial of her first appeal or at any time over the next eight months, instead opting to file this lawsuit. Second, also unlike <u>Watts</u>, Ms. Palmeri was already represented by counsel at the time of her first denial.  Third, she has made no attempt to file an affidavit affirming that she believed that she had exhausted her administrative remedies at the time of this first denial.[3]  Quite to the contrary, she had, up through the time of her second amended complaint, continued to assert that she never received a denial letter from Reliastar and that her claim was thus deemed denied.  (Am. Compl., ¶¶ 102-111.)  It was not until Reliastar confronted her with a signed and certified mail receipt that the Plaintiff abandoned that argument.  (Pl.'s Resp. to Def. Coca-Cola's Mot. for Summ. J., at 17.)  Under these circumstances, she cannot now demonstrate that she subjectively believed that a second level of appeal was not required or that this belief caused her not to exhaust her administrative remedies.  <u>See also</u> <u>Gallegos v. Mount Sinai Med. Ctr.</u>, 210 F.3d 803, 811 (7th Cir. 2000)(requiring that the claimant show that she believed based on the administrator's

---

[3]The Plaintiff cannot claim ignorance as to the Eleventh Circuit's requirements under <u>Watts</u>.  As early as September 2003, Palmeri and the other consolidated plaintiffs included several citations to the case and its facts as part of their brief in Response to Defendant Coca-Cola's Motion to Dismiss the Consolidated Complaint. Curiously, she has chosen not to cite it in any of the motions or responses currently before this Court.

representations, that she had a choice between pursuing further administrative remedies or going to court).

The Plaintiff next argues that even if she did not exhaust her administrative remedies, this case should be remanded or exhaustion excused because the denial letter Reliastar sent to her did not provide her with adequate notice of the proper appeals procedure.  Under 29 U.S.C. § 1133, a plan must provide adequate notice of denial to the claimant, which includes "setting forth the specific reasons for such denial," and providing reasonable opportunity for a full and fair review.  The Eleventh Circuit has stated that the usual remedy for an inadequate benefits termination letter is "remand to the plan administrator for an out-of-time administrative appeal." <u>Counts v. American Gen. Life and Acc. Ins. Co.</u>, 111 F.3d 105, 108 (11th Cir. 1997).[4]

The Plaintiff contends that Reliastar's denial letter was inadequate because it failed to notify her as to the mandatory nature of this second level of appeal.  The federal regulation in effect at that time, however, required only that a denial letter provide the participant with "appropriate information as to the steps to be taken <u>if</u> the participant or beneficiary wishes to submit his or her claim for review."  29 C.F.R. 2560.503-1(f)(4) (1984) (emphasis added); <u>see also</u> <u>Garland v. General Felt Indus.</u>,

---

[4] In that case, the Eleventh Circuit did not allow remand because the claimant consistently took the position before the district court that remand was not warranted.

Inc., 777 F. Supp. 948, 951 (N.D. Ga. 1991); Medoy v. Warnaco Employees' Long

Term Disability Ins. Plan, 2005 WL 3775953, at *6 n.7 (E.D.N.Y. 2005).   Thus,

neither the statute nor the relevant regulation required that a denial letter emphasize

the mandatory nature of an appeal.   The Court finds that Reliastar's letter complied

with the statute's requirements and gave the Plaintiff appropriate notice as to what to

do should she wish to appeal that decision.   Remand or excusal is therefore

inappropriate.

Because the Plaintiff failed to exhaust her administrative remedies and

Reliastar's denial letter was not deficient, the Court need not examine the Plaintiff's

Motion on the Standard of Review or the merits of her claim for wrongful denial of

benefits under 29 U.S.C. § 1132(a)(1)(B).   The Court finds that the Defendant Coca-

Cola's Motion for Summary Judgment is warranted.   Defendant Reliastar's Motion

for Summary Judgment is also granted as to this claim.

B.   Failure to Provide Plan Documents Under ERISA § 502(c)

The Plaintiff also claims penalties against Coca-Cola and Reliastar for failure

to provide her with all the requisite plan documents.   Under ERISA, the plan

administrator is required, following a request by a claimant to "furnish a copy of the

latest updated summary,[sic] plan description, and the latest annual report, any

terminal report, the bargaining agreement, trust agreement, contract, or other

instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). If the administrator either refuses or fails to comply with such requests within 30 days, § 502(c) grants a district court with the discretion to subject the administrator to fines of up to $110.00 per day.  29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1.  In exercising this discretion, a court should consider whether a defendant's failure to provide documents was made in bad faith and whether it prejudiced a plan beneficiary.  See Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1232 (11th Cir. 2002).  This penalty is designed as a punitive damage to the violator, not as compensation for the beneficiary.  Id.; see also Daughtrey v. Honeywell, Inc., 3 F.3d 1488, 1494 (11th Cir. 1993) ("[T]he penalty range of up to $100 per day is unrelated to any injury suffered by the plan participant, suggesting that section 1132(c) is intended to punish noncompliance with the employer or administrator's disclosure obligations and not to compensate the participant.").

### 1. Defendant Coca-Cola

The Plaintiff first requested all documents relevant to the Plan from Defendant Coca-Cola on March 19, 2001.  Reliastar responded on April 2, 2001, by providing a copy of the Plaintiff's claim file and the next day gave a copy of the SPD.  This SPD did not include, however, any information about the Plan's appeals procedure.  (Def.

Reliastar's Mot. for Summ. J., Ex. 2.)   In the next eight months, the Defendant received no further communication from the Plaintiff.  Then, on December 21, 2001, the Plaintiff filed this lawsuit, which included allegations that the Defendants had failed to provide her with all Plan documents. (Compl., ¶¶ 84-92.)   Coca-Cola responded on March 8, 2002, by providing an extensive list of Plan documents.  The Plaintiff now asserts that Coca-Cola is liable for seventeen documents[5] of which she was deprived during that 324 day period.[6]  (Pl.'s Resp. to Coca-Cola's Part. Mot. for Summ. J., at 5-6.)  According to the Plaintiff's calculations, this results in a maximum total penalty award of $605,880.00.[7]

The Court agrees only with the Plaintiff's contention that the documents provided to her on April 2 & 3, 2001, were inadequate.  The SPD sent by Reliastar

---

[5]In order to arrive at a total of seventeen delinquent documents, the Plaintiff has itemized the Plan and its individual amendments (Am. Compl., Exs. 1-A; 1-B;1-D; 1-E; and 1-F), the SPD and its amendments (Id., Exs.1-H through 1-J), the Trust Agreement (Ex.1-K), the Administrative Services Agreement (Id., Ex. 1-O), the contract under which the Plan is operated (Id., Ex. 5), as well as six other additional documents (Id., Ex. 1-G; 1-L; 1-N; 1-Q; 1-R; and1-S.)

[6]The documents became due on April 18, 2001, 30 days after the Plaintiff requested them.  The penalty period thus began on that date and ran through March 8, 2002, a total of 324 days.

[7]If the Court chose to assess the maximum penalty of $110 per day for Defendant Coca-Cola's failure to provide each of the seventeen documents and multiplied that by 324 days, it would arrive at the total award proposed by the Plaintiff.

stated explicitly, "[i]f a claim for benefits is denied in whole or in part, you're entitled to a full review.  For more information on reviews of denied claims, refer to your Administrative Information Booklet."  (Def. Reliastar's Mot. for Summ. J, Ex. 2, at 12.) That booklet was not included, and the SPD thus did not even contain a description of the appeals process, information that was highly relevant to the Plaintiff in pursuing her disability claim.  The Plaintiff has not demonstrated, however, that Coca-Cola's failure to provide all the documents required under the statute was committed in bad faith.  Indeed, the record demonstrates that Coca-Cola contacted the appeals coordinator for Reliastar within the thirty day period to inquire as to whether Reliastar had responded to the Plaintiff's letter. (Def. Reliastar's Mot. for Summ. J., Ex. 18, at PRS 214).   Moreover, despite the SPD's explicit citation to the "Administrative Information Booklet," a document that had not been included, the Plaintiff made no further inquiries regarding this missing reference.  She instead chose to wait eight months and then filed this lawsuit.  The Court thus also finds that the Plaintiff was not prejudiced by this failure.  Indeed, she was represented by an attorney whose single-spaced, five page letter to Reliastar and Coca-Cola on March 19, 2001, exhibited a thorough understanding of ERISA and the Plaintiff's rights under the statute.  (Id., at PRS 152-56.)  If the Plaintiff or her attorney had held any

real concerns about the appeals process or any undisclosed documents related to the Plan, they should have made a follow-up inquiry.

Despite this lack of bad faith on the part of Coca-Cola or prejudice to the Plaintiff, this Court finds that Coca-Cola's failure to provide all the documents required under ERISA § 502(c) should not go unpunished in this instance. "Congress' purpose in enacting the ERISA disclosure provisions was to ensure that 'the individual participant knows exactly where he stands with respect to the plan.'" Hamilton v. Mecca, Inc., 930 F. Supp. 1540, 1556 (S.D. Ga. 1996) (quoting Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 118 (1989)). Because the Plaintiff was in the middle of the Plan's appeals process when she made this request, her need to know where she stood was even more pressing. Coca-Cola's SPD should thus have provided an accurate description of that process and her rights under it. The incomplete SPD provided to the Plaintiff was clearly inadequate for this purpose. Moreover, even if the Plaintiff had been provided with an updated SPD, including the amendments and the Administrative Information Booklet, these documents would still have incorrectly informed her that Reliastar had final discretionary authority in determining her LTD eligibility. The fact that the Plaintiff had retained an attorney and apparently did not rely on this poorly drafted document does not give Coca-Cola a free pass for its agent's negligence. Given the lack of prejudice or bad faith,

however, the Plaintiff's exorbitant demand is nowhere near an appropriate penalty. The Court thus orders Defendant Coca-Cola to pay the Plaintiff $100 a day for the 324 day period during which she was without a complete summary of the Plan, resulting in a total award of $32,400.00.

### 2. Defendant Reliastar

The Plaintiff asserts that Defendant Reliastar should also be subject to § 502(c) penalties for failing to provide her with these documents.  ERISA has established that the plan administrator holds responsibility for providing a beneficiary with the necessary documentation.   See 29 U.S.C. § 1024(b)(1)(B)(4).   Here, the Plan documents clearly identify Coca-Cola as the Plan Administrator with final discretionary authority to determine eligibility.  The Eleventh Circuit has established, however, that where an entity other than the named plan administrator demonstrates sufficient decisional control over the claim process, it can be held liable under ERISA. See Hamilton v. Allen-Bradley Co., Inc., 244 F.3d 819, 824 (11th Cir. 2001); Rosen v. TRW, Inc., 979 F.2d 191, 193 (11th Cir. 1992).  Thus, Reliastar could potentially be liable for § 502(c) penalties if the facts demonstrated that it acted as the de facto administrator.  See Oliver v. The Coca-Cola Co., 397 F. Supp. 2d 1318, 1322 (N.D. Ala. 2005) (finding a so-called "administrative services provider" for Coca-Cola to be the de facto plan administrator); Brucks v. Coca-Cola Co., 391 F. Supp. 2d 1193,

1213 (N.D. Ga. 2005) (indicating that a § 502(c) claim could be sustained against Defendant Reliastar if Plaintiff had demonstrated facts sufficient to support such a claim); Cheal v. Life Ins. Co. of North America, 330 F. Supp. 2d 1347, 1357 (N.D. Ga. 2004) (denying dismissal of a § 502(c) claim against an insurance company that acted as the plaintiff's claims fiduciary, "and administered his claim including providing him claim forms to complete, making a decision on his claim, and notifying him of this decision").

The Court need not engage in a factual determination as to whether Reliastar acted as the de facto Plan Administrator, however, for several reasons. First, the Plaintiff has not alleged that Reliastar failed to provide these documents in bad faith. Indeed, according to the undisputed testimony of Charlyne Lato, Reliastar's Director of Disability Administration, her company submitted to the Plaintiff on April 3, 2001"a true copy of the SPD maintained in Reliastar's files." (Def. Reliastar's Mot. for Summ. J., Att. 3.) Furthermore, as discussed above, the Plaintiff has not demonstrated any significant prejudice from this failure. Most importantly, the cause for sanctions against Coca-Cola–i.e., their negligence in drafting a misleading SPD–is not applicable to Reliastar. Thus, even if the facts demonstrate that Reliastar was acting as a de facto administrator in regards to the Plaintiff's claim, the Plaintiff still

could not show cause to justify a § 502(c) penalty against this Defendant.  Summary

judgment for Reliastar is thus warranted on this claim.

      C. <u>Attorney's Fees</u>

      The Plaintiff also claims attorney's fees under 29 U.S.C. § 1132(g).  The statute

authorizes this Court to award reasonable attorney's fees and costs of action to either

party in an ERISA action.  The Eleventh Circuit considers the following factors in

determining an award of attorney's fees:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the
> ability of the opposing parties to satisfy an award of attorney's fees; (3)
> whether an award of attorney's fees against the opposing parties would
> deter other persons acting under similar circumstances; (4) whether the
> parties requesting attorney's fees sought to benefit all participants and
> beneficiaries of an ERISA plan or to resolve a significant legal question
> regarding ERISA itself; (5) [and] the relative merits of the parties'
> positions.

<u>Wright v. Hanna Steel Corp.</u>, 270 F.3d 1336, 1344 (11th Cir. 2001).  Here, only

Defendant Coca-Cola has been found culpable for failing to timely provide the

Plaintiff all the required Plan documents.  Furthermore, the Plaintiff has failed to show

that this error was committed in bad faith.  Although Coca-Cola certainly holds the

ability to pay, the Plaintiff has not shown that any of the other factors support such an

award.  The Court thus denies the Plaintiff's motion on this claim.

IV. <u>CONCLUSION</u>

For the reasons set forth below, the Court finds as follows:  Reliastar's Motion for Summary Judgment [Doc. 76] is GRANTED; Coca-Cola's Motion for Summary Judgment [Doc. 77] is GRANTED; Coca-Cola's Partial Motion [Doc. 78] for Summary Judgment is DENIED; the Plaintiff's Motion for Standard of Review [Doc. 79] is DENIED as moot; the Plaintiff's Partial Motion for Summary Judgment [Doc. 80] is GRANTED in part and DENIED in part; and the Plaintiff's Motion for Summary Judgment [Doc. 81] is DENIED. The Clerk is directed to enter a final judgment in favor of the Plaintiff against the Defendant Coca-Cola in the amount of $32,400, and against the Plaintiff and in favor of the other Defendants.

SO ORDERED, this 28 day of August, 2006.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge